STATE OF NEBRASKA, APPELLEE, V.
COLBY P. BARTHOLOMEW, APPELLANT.
602 N.W. 2d 510

Filed November 19, 1999.    No. S-98-585.

David E. Kimble, Seward County Public Defender, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Seeing sparks coming from a car driven by Colby P. Bartholomew, a sheriff's deputy stopped Bartholomew's vehicle and subsequently discovered that Bartholomew's Nebraska driving privileges had been revoked for a period of 15 years. After a bench trial, Bartholomew was convicted of driving during a 15-year period of license revocation, a Class IV felony, and was ultimately sentenced to a term of 2 to 4 years' imprisonment. Bartholomew appeals, claiming that the traffic stop and the deputy's request for Bartholomew's driver's license were unlawful and that the sentence was excessive. For the reasons that follow, we affirm the judgment of the district court as modified.

## FACTUAL BACKGROUND

Bartholomew was charged in the district court with operating a motor vehicle on the highways of this state while his operator's license had been revoked for a period of 15 years in violation of Neb. Rev. Stat. § 60-6,197(7) (Cum. Supp. 1996). Prior to trial, Bartholomew moved to suppress his driving record as the fruit of an illegal search and seizure. The following testimony was adduced at the suppression hearing:

Seward County sheriff's deputy Daniel J. Nantkes was on duty and driving his patrol car during the daytime on September 25, 1997, when he saw sparks coming from the rear of a blue car driven by Bartholomew. Nantkes activated his overhead lights, signaling Bartholomew to pull over. Nantkes stated that he did so because he was worried that the sparks might cause damage to Bartholomew's car or cause a fire if the car proceeded down the highway.

Once Bartholomew's car came to a stop, Nantkes told Bartholomew about the sparks. According to Nantkes, Bartholomew responded by saying that the muffler may have been the reason for the sparks. Nantkes then requested Bartholomew's driver's license, vehicle registration, and proof of insurance. Bartholomew produced a California operator's license and proof of insurance, but did not have a vehicle registration document.

Nantkes returned to the patrol car to run a records check on Bartholomew's driver's license. Nantkes said he instructed Bartholomew to remain in the blue automobile. Despite that instruction, Bartholomew stepped out of the car to look underneath it. Bartholomew said that he observed nothing that would cause sparks and that the car was operating properly prior to being stopped. Bartholomew acknowledged, however, that he did not know whether the vehicle was actually emitting sparks.

The records check of Bartholomew's license revealed that Bartholomew's driving privileges had been revoked. Nantkes placed Bartholomew under arrest for driving on a revoked license and took Bartholomew into custody.

After hearing arguments at the conclusion of the suppression hearing, the district court ruled that Nantkes' stop of Bartholomew was lawful. At trial, Bartholomew's counsel again

objected to the admission of Bartholomew's driving record, arguing that the stop was unlawful. After the district court overruled Bartholomew's objection, Nantkes went on to testify that Bartholomew's driving privileges were under a 15-year revocation at the time of arrest.

Nantkes' trial testimony regarding the stop mirrored that which he gave in the suppression hearing. Thereafter, the State offered a driving abstract of Bartholomew, certified by the Nebraska Department of Motor Vehicles. The driving abstract revealed that Bartholomew had been convicted of driving under the influence of alcohol (DUI) on four separate occasions, the last of which resulted in a 15-year revocation of Bartholomew's driving privileges.

The State also offered a certified copy of a York County Court transcript containing the conviction and January 1992 sentencing of Bartholomew for third-offense DUI. The sentencing transcript denoted that Bartholomew was present and represented by counsel when the court revoked his driving privileges for a period of 15 years. In addition to revoking Bartholomew's driving privileges, the York County Court had sentenced Bartholomew to 4 months in jail.

Bartholomew objected to the admission of both these exhibits as a fruit of an unlawful stop, and the objection was overruled by the district court. Upon finding Bartholomew guilty of driving during a 15-year period of license revocation, a Class IV felony, the district court sentenced Bartholomew on May 26, 1998, to serve 2 to 4 years in prison, and also revoked Bartholomew's driving privileges for 15 years to commence upon his release from prison.

## ASSIGNMENTS OF ERROR

Bartholomew claims, summarized and restated, that the district court erred in (1) failing to suppress evidence of Bartholomew's driving record as the fruit of an unlawful search and seizure and (2) imposing an excessive sentence on Bartholomew.

## SCOPE OF REVIEW

In reviewing a district court's ruling on a motion to suppress evidence obtained through a warrantless search or seizure,

an appellate court conducts a de novo review of reasonable suspicion and probable cause determinations, and reviews factual findings for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997).

■ Sentences within statutory limits will only be disturbed by an appellate court if the sentence complained of was an abuse of judicial discretion. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

## ANALYSIS

### TRAFFIC STOP

In his first assignment of error, Bartholomew argues that the district court should have suppressed evidence of Bartholomew's driving record as the fruit of an illegal search and seizure. To be precise, Bartholomew claims that the deputy, Nantkes, did not have reasonable suspicion to make the investigatory stop that ultimately led to his requesting Bartholomew's driver's license. We disagree.

We initially note that the trial court found, as a factual matter, that Nantkes' testimony was credible and that sparks were emitting from Bartholomew's automobile. In choosing to believe Nantkes' testimony, the district court found that Nantkes observed the sparks prior to initiating the stop and was concerned that Bartholomew's car might catch fire. After conducting our review of the record, we find no clear error and accept, rather than disturb, those findings. See *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997).

The evidence reveals that after being lawfully stopped, Bartholomew informed Nantkes that the cause of the sparks could have been Bartholomew's muffler's dragging on the pavement. In Nebraska, it is a traffic infraction to drive a vehicle with a muffler that is in disrepair. See Neb. Rev. Stat. § 60-6,286 (Reissue 1998). Compare, also, Neb. Rev. Stat. § 60-682 (Reissue 1998) (mandating that violation of Nebraska Rules of the Road is traffic infraction) and Neb. Rev. Stat. § 60-601 (Supp. 1997) (placing § 60-6,286 within Nebraska Rules of the Road). It does not matter whether the muffler ultimately was the cause of the sparks so long as the officer had a reasonable sus-

picion, based on articulable facts, that a traffic violation was occurring. See *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996).

It is well established that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *U.S. v. Rehkop*, 96 F.3d 301 (8th Cir. 1996); *U.S. v. Bell*, 86 F.3d 820 (8th Cir. 1996); *U.S. v. Pereira-Munoz*, 59 F.3d 788 (8th Cir. 1995). See, also, *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). If an officer has probable cause to stop a violator, the stop is objectively reasonable, and any ulterior motivation on the officer's part is irrelevant. *U.S. v. Bell, supra*. See, also, *Whren v. United States, supra*.

Our de novo review of the record leads us to conclude that probable cause existed for Nantkes to stop the driver of Bartholomew's vehicle. Moreover, a law enforcement officer may, during a routine traffic stop, run a computer check to establish whether a vehicle has been stolen and to ascertain whether there are outstanding arrest warrants for the occupants of the vehicle. *U.S. v. White*, 81 F.3d 775 (8th Cir. 1996). Nantkes efficiently carried out this procedure during his stop of Bartholomew.

The facts found by the district court, all of which are amply supported in the record, demonstrate that Nantkes' stop of Bartholomew, request for Bartholomew's license, and subsequent records check violated neither the Fourth Amendment to the U.S. Constitution, nor article I, § 7, of the Nebraska Constitution. For these reasons, Bartholomew's first assignment of error is without merit.

In addition, the State requests that we recognize a community caretaking exception to the Fourth Amendment warrant requirement because the district court's findings could be read to support such an exception in cases where sparks are being emitted from a vehicle on a highway. Under these circumstances, however, we need not consider the so-called community caretaking exception, and we do not do so in the instant case.

## SENTENCE

Bartholomew also appeals for a reduction in his sentence pursuant to this court's authority to modify criminal sen-

tences. See Neb. Rev. Stat. § 29-2308 (Reissue 1995). While we typically review criminal sentences that are within statutory limits for abuse of discretion, *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999), an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal, *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

With that in mind, we note Bartholomew's May 26, 1998, sentence stemmed from his conviction of a Class IV felony on April 3. As such, Bartholomew's sentence falls within the strictures of Neb. Rev. Stat. § 29-2204 (Cum. Supp. 1998) (operative date April 15, 1998). See *State v. Urbano, supra* (applying *Randolph* doctrine and holding that defendant convicted prior to enactment came under amended statute because sentence is not final judgment until conclusion of appeals). While Bartholomew did not raise the issue on appeal, we note plain error in Bartholomew's sentence, insofar as the minimum limit imposed exceeded that which is permitted by § 29-2204.

With regard to sentences for Class IV felonies, § 29-2204(1)(a)(ii)(A) mandates that the sentencing court "shall fix the minimum and maximum limits of the sentence, *but the minimum limit fixed by the court shall not be . . . more than one-third of the maximum term . . . .*" (Emphasis supplied.)

Under § 29-2204(1)(a)(ii)(A), then, the minimum limit for Class IV felonies cannot exceed one-third of the maximum statutory sentence. The maximum statutory sentence for a Class IV felony is 5 years, which can also be expressed as 60 months. See Neb. Rev. Stat. § 28-105 (Reissue 1995). Therefore, since one-third of 60 months is 20 months, Bartholomew could not be sentenced to a minimum sentence of more than 20 months for the conviction of a Class IV felony. See *State v. Urbano, supra.*

As previously noted, the district court sentenced Bartholomew to an indeterminate sentence with a minimum term of 2 years, which can be restated as 24 months. Thus, we modify Bartholomew's sentence to a term of 20 months to 4 years in prison.

Notwithstanding that, Bartholomew argues that the district court abused its discretion by ordering Bartholomew to serve a prison sentence instead of probation. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

At the time of his sentencing, Bartholomew was 41 years old. Prior to the instant offense, Bartholomew had been convicted of four separate DUI offenses between the years of 1979 and 1991. Bartholomew served jail time—a sentence of 4 months—for only the most recent of those offenses. Given that fact and the nature of the repeat offenses, we conclude that the sentence imposed on Bartholomew is not excessive, nor does it constitute an abuse of discretion by the district court. Therefore, we affirm the sentence as modified.

## CONCLUSION

Bartholomew's conviction is affirmed. Bartholomew's sentence, as modified, is affirmed. Bartholomew's sentence as modified is 20 months' to 4 years' imprisonment.

AFFIRMED AS MODIFIED.