STATE OF NEBRASKA, APPELLEE,
v. DUANE D. DALLMANN, APPELLANT.
621 N.W.2d 86

Filed December 22, 2000.   No. S-99-1411.

Dennis R. Keefe, Lancaster County Public Defender, and Kristi J. Egger Brown for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Duane D. Dallmann, was convicted of possession of a controlled substance. On appeal, Dallmann argues that police officers stopped his vehicle as a pretext to search for

drugs, that various searches violated his Fourth Amendment rights, that he was not given *Miranda* warnings, and that his sentence is excessive.

Although the substantive issues raised on appeal are significant, this appeal also requires us to address whether a poverty affidavit that fails to state the nature of the action and that the appellant is entitled to redress is sufficient under Neb. Rev. Stat. § 25-2301.01 (Cum. Supp. 2000) to vest this court with jurisdiction. When Dallmann filed his notice of appeal, he also filed a motion for leave to proceed in forma pauperis. In the poverty affidavit filed in support of the motion, Dallmann stated that he was unable to pay the costs of appeal but did not list the nature of the action or that he believed he was entitled to redress. We determine these requirements are not jurisdictional. We further determine that Dallmann's assignments of error are without merit. Accordingly, we affirm.

## ASSIGNMENTS OF ERROR

Dallmann assigns, rephrased, that the district court erred in (1) overruling his motions to suppress, (2) finding that the evidence was sufficient to find Dallmann guilty beyond a reasonable doubt, and (3) imposing an excessive sentence.

## BACKGROUND

On June 14, 1999, an information was filed charging Dallmann with possession of a controlled substance, a Class IV felony. Dallmann filed motions to suppress evidence and statements he made to various police officers. A hearing was held on the motions, and three police officers testified.

Jeff Bliemeister, a deputy sheriff and narcotics investigator, testified that on May 13, 1999, he and another investigator, Forrest Dean Dalton, Jr., were on their way to conduct surveillance on the residence of Nancy Thurman. Neither investigator was in uniform, and they were driving an unmarked vehicle. On the way to the residence, the investigators saw Thurman in a car leaving the area. The investigators then followed Thurman to a convenience store, where she parked her car. The investigators parked in a church parking lot across the street and observed Thurman. Thurman sat in her car and did not enter the convenience store. A few minutes later, another car pulled into the con-

venience store parking lot. A man, later identified as Dallmann, got out of the car, put the hood up, and stood there for a couple of seconds. Thurman then got out of her car and met Dallmann in between the two cars. The investigators observed Thurman and Dallmann walk to the passenger side of Dallmann's vehicle and talk. The two talked for less than 5 minutes, then returned to their cars. Dallmann and Thurman remained in their cars for about 30 seconds, then they both got out of the cars again, met briefly, and left. The investigators did not observe any objects change hands between Thurman and Dallmann and did not see anything dropped or picked up by either of them. During the time Dallmann and Thurman were talking, the investigators radioed for a uniformed police unit to come into the area.

Based on the investigators' suspicions that a drug transaction had taken place, they decided to follow Dallmann. In Bliemeister's police report, he wrote that the officers planned to stop Dallmann. As Dallmann pulled out of the convenience store, the investigators observed that he was driving without the headlights of his vehicle on. It was approximately 9 p.m. and completely dark. The investigators informed the uniformed unit that Dallmann was driving without his headlights on. One of the uniformed officers, Danny Reitan, then stopped Dallmann about three blocks away.

Reitan asked Dallmann to step out of the vehicle. After Dallmann had exited the vehicle, Reitan asked him if he had any weapons. Dallmann replied, "No." Reitan asked if he could check, and Dallmann replied, "Yes." At approximately the same time, Bliemeister asked Dallmann if he could search the car for weapons, and Dallmann said, "Go ahead. Yes." Reitan conducted a pat-down search and did not find any weapons. Reitan next asked Dallmann if he had any narcotics. Dallmann replied, "No." When asked by Reitan if he could search, Dallmann said, "Yes." During the search, Reitan pulled a cigarette package out of Dallmann's pocket. Dallmann stated that he did not know what was in it. When Reitan opened it, he found cigarettes and a small amount of cash. Dallmann then stated, "Oh, that's what's in there."

Reitan began to search Dallmann's pockets and pant cuffs and then asked if he could search Dallmann's shoes. Dallmann

replied, "Yes." Dallmann was wearing leather moccasin-type shoes and was able to simply lift his feet out of them. As Dallmann lifted his left foot out of the shoe, he tried to kick it under the car and then, using his foot, pulled it back toward Reitan. Reitan then observed a white napkin in the bottom of the shoe. Reitan asked Dallmann what was in the shoe, and Dallmann replied, "That just fell out of the tire." Dalton then came over and removed the napkin from the shoe. Inside the napkin was a clear plastic baggie containing an off-white substance. Believing the substance to be methamphetamine, Reitan placed Dallmann under arrest and led him back to the police cruiser. After the drugs were found, Bliemeister expanded the scope of his search of the car for not only weapons, but contraband and drugs. No drugs were found in the car, but an address book was found containing several names and telephone numbers of people Bliemeister and Dalton had arrested in the past on narcotics-related charges or who were currently being investigated. The address book was found in the pocket of a denim jacket in the back seat.

After learning that drugs had likely been found, Bliemeister attempted to talk to Dallmann. Dallmann, however, refused to talk to Bliemeister and stated that he wanted an attorney. Bliemeister stopped questioning Dallmann at that point. Bliemeister testified that he did not read Dallmann *Miranda* warnings because Dallmann had invoked his right to counsel. The record also indicates that none of the investigating officers advised Dallmann of his *Miranda* rights at any time. The substance that was found was then pretested, and a positive result was obtained. After the substance tested positive, Dallmann was handcuffed and placed in the back of Reitan's cruiser. As Bliemeister was writing a citation for Dallmann to sign, he told Dallmann that the charge was for possession of methamphetamine. Dallmann then stated that the methamphetamine was not for him, that the officers could "piss test" him, and that he was just going to sell the drugs to make a little extra money. Bliemeister testified that Dallmann's statements were unsolicited.

Dallmann was charged by information with possession of a controlled substance pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1998). Dallmann filed a motion to suppress state-

ments because he had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Dallmann also filed a motion to suppress evidence on the bases that the investigators did not have probable cause to stop his vehicle and conduct searches, that the searches were not incident to a lawful arrest, and that there was no valid consent to search. A hearing was held, and the motions were overruled. In overruling the motions, the district court found that Dallmann's consents to search were made freely and voluntarily. The court further found that any expansion of the search of the vehicle was a search incident to arrest. The court found that Dallmann was not in custody when he made statements about the napkin in his shoe and the contents of his package of cigarettes. The court determined that Dallmann was in custody when he made the statement that he had planned to sell the drugs. However, the court determined that the statement was not the product of any police interrogation, but, instead, was volunteered.

After a stipulated trial consisting of the suppression hearing testimony and a laboratory report, at which Dallmann preserved his objections to the evidence, Dallmann was convicted. The district court sentenced Dallmann to not less than 18 months' nor more than 36 months' incarceration, with credit given for 209 days already served. The sentence was to run consecutively to any other sentence that Dallmann was already serving.

Dallmann appealed. Along with his notice of appeal, Dallmann also filed a motion for leave to proceed in forma pauperis and an affidavit in support of the motion. The affidavit stated that Dallmann was unable to pay the costs of appeal but did not state the nature of the action or state that Dallmann believed he was entitled to relief. The record contains an order of the district court sustaining Dallmann's motion to proceed in forma pauperis. The State filed a motion for summary dismissal because the affidavit failed to include statements required by § 25-2301.01.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to

be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000).

■ In reviewing a motion to suppress statements to determine whether an individual was in custody for purposes of *Miranda*, findings of fact as to the circumstances surrounding the interrogation are reviewed for clear error, and the determination of whether or not a reasonable person would have felt that he or she was free to leave is reviewed de novo. See *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000).

■ In reviewing a district court's ruling on a motion to suppress evidence obtained through a warrantless search or seizure, an appellate court conducts a de novo review of reasonable suspicion and probable cause determinations, and reviews factual findings for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Lara*, 258 Neb. 996, 607 N.W.2d 487 (2000); *State v. Bartholomew*, 258 Neb. 174, 602 N.W.2d 510 (1999).

## ANALYSIS

### MOTION FOR SUMMARY DISMISSAL
### BECAUSE OF LACK OF JURISDICTION

The State has filed a motion for summary dismissal because the poverty affidavit in support of Dallmann's motion to proceed in forma pauperis failed to include statements required by § 25-2301.01. Specifically, Dallmann provided a motion and affidavit stating that he was unable to pay the cost of the appeal, but did not provide a statement of the nature of the action or a statement that he believed was entitled to redress. The State contends that because the poverty affidavit serves as a substitute for the docket fee, the failure to strictly comply with all statutory provisions governing poverty affidavits is jurisdictional.

■ This court generally does not acquire jurisdiction of an appeal unless a notice of appeal is filed and the docket fee is paid within 30 days of the final order. See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2000). Under § 25-2301.01, an indigent appellant can avoid paying the docket fee by requesting to proceed in forma pauperis. Section 25-2301.01 states in part:

> An application to proceed in forma pauperis shall include an affidavit stating that the affiant is unable to pay the fees

and costs or give security required to proceed with the case, the nature of the action, defense, or appeal, and the affiant's belief that he or she is entitled to redress.

Before August 28, 1999, Neb. Rev. Stat. § 29-2306 (Reissue 1995), which pertains specifically to in forma pauperis criminal appeals, stated only that the affiant must state that "he or she is unable by reason of poverty to pay the costs" of the appeal. Section 29-2306 did not require that the affiant state the nature of the action, defense, or appeal, and the belief that he or she was entitled to redress. Effective August 28, 1999, however, § 29-2306 was amended and provides:

> If a defendant in a criminal case files, within thirty days after the entry of the judgment, order, or sentence, an application to proceed in forma pauperis in accordance with sections 25-2301 to 25-2310 with the clerk of the district court, then no payment of the docket fee shall be required of him or her unless the defendant's application to proceed in forma pauperis is denied. The clerk of the district court shall forward a certified copy of such application, including the affidavit, to the Clerk of the Supreme Court. *If an application to proceed in forma pauperis is filed and granted, the Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court.* In cases in which an application to proceed in forma pauperis is granted, the amount of the costs shall be endorsed on the mandate and shall be paid by the county in which the indictment was found.

(Emphasis supplied.) § 29-2306 (Cum. Supp. 2000). Thus, under the amended version of § 29-2306, a request to proceed in forma pauperis in a criminal appeal must be filed in accordance with § 25-2301.01.

Neb. Rev. Stat. § 25-2301.02 (Cum. Supp. 2000), a new statutory section that was also effective August 28, 1999, provides in part:

> (1) An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application: (a) Has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are

frivolous or malicious. The objection to the application shall be made within thirty days after the filing of the application. Such objection may be made by the court on its own motion or on the motion of any interested person. The motion objecting to the application shall specifically set forth the grounds of the objection. An evidentiary hearing shall be conducted on the objection unless the objection is by the court on its own motion on the grounds that the applicant is asserting legal positions which are frivolous or malicious. If no hearing is held, the court shall provide a written statement of its reasons, findings, and conclusions for denial of the applicant's application to proceed in forma pauperis which shall become a part of the record of the proceeding. If an objection is sustained, the party filing the application shall have thirty days after the ruling or issuance of the statement to proceed with an action or appeal upon payment of fees, costs, or security notwithstanding the subsequent expiration of any statute of limitations or deadline for appeal.

We have never addressed whether all the exact requirements of the former version of § 25-2301.01, see Neb. Rev. Stat. § 25-2301 (Reissue 1995), had to be met in order to vest this court with jurisdiction over an appeal. However, in *State v. Schmailzl*, 248 Neb. 314, 534 N.W.2d 743 (1995), we held that a poverty affidavit must assert that the defendant is unable by reason of poverty to pay the costs of the appeal in order to vest jurisdiction with an appellate court. We have also dismissed for lack of jurisdiction when the appellant failed to properly sign the poverty affidavit under oath. *In re Interest of T.W. et al.*, 234 Neb. 966, 453 N.W.2d 436 (1990); *State v. Hunter*, 234 Neb. 567, 451 N.W.2d 922 (1990); *In re Interest of K.D.B.*, 233 Neb. 371, 445 N.W.2d 620 (1989).

In *In re Interest of Noelle F. & Sarah F.*, 249 Neb. 628, 544 N.W.2d 509 (1996), we addressed a case in which the district court had denied the appellant's motion to proceed in forma pauperis, stating that if the poverty affidavit is not sufficient to meet the statutory requirements of § 25-2301 or is found to be untrue, the appeal has not been perfected. Thus, in *In re Interest of Noelle F. & Sarah F.*, we held that an in forma pauperis affi-

davit which is found by the trial court to be not well taken is insufficient to perfect an appeal on the merits.

Under the amended statutes, however, we now conclude that the plain language of § 29-2306, as amended, and §§ 25-2301.01 and 25-2301.02 make clear that the absence of language in a poverty affidavit stating the nature of the action and that the affiant is entitled to redress will not divest this court of jurisdiction. Section 29-2306 clearly states that if in forma pauperis status is sought and granted, the Nebraska Court of Appeals or Supreme Court shall acquire jurisdiction of the case when the notice of appeal is filed with the clerk of the district court. Under § 29-2306, when a request to proceed in forma pauperis is granted, the amount of the costs "shall be paid by the county in which the indictment was found." With the exception of the 30-day filing requirement, § 29-2306 does not make any exceptions for in forma pauperis status that may have been improperly granted or granted in error. Thus, in a criminal case, once in forma pauperis status has been granted by the district court, the appellate court will be entitled to receive the docket fee.

Section 25-2301.02 makes clear that challenges to the ability of a defendant to proceed in forma pauperis are to occur in the district court and that the district court is charged with the responsibility of granting or denying the motion to proceed in forma pauperis. We have previously stated:

We have uniformly held that lower courts are divested of subject matter jurisdiction over a particular case when an appeal of that case is perfected. . . . [W]e [have] held that an in forma pauperis appeal is perfected when the appellant timely filed a notice of appeal and an affidavit of poverty.

Although jurisdiction is vested in the appellate court upon timely filing of a notice of appeal and an affidavit of poverty, some duties are still required of the lower court. . . . For example, the lower court must forward to the appellate court the notice of appeal, requests for the transcript and the bill of exceptions, and the docket fee or poverty affidavit. Sections 25-2301 and 25-2308 require the lower court to act if it determines that the allegations of poverty

are untrue or if it determines that the appeal is not taken in good faith.

Generally, appellants are entitled to the benefits of an in forma pauperis appeal when the affidavit of poverty and notice of appeal are filed and stand uncontradicted and unobjected to. If there is no hearing on the poverty affidavit and the appeal, or when there is a hearing and the evidence is uncontradicted, the trial court has a duty to allow the appellant to proceed in forma pauperis.

*Flora v. Escudero,* 247 Neb. 260, 264-65, 526 N.W.2d 643, 646-47 (1995). It is not a function of this court to determine whether an affidavit to proceed in forma pauperis contains specific language stating the nature of the case and that the affiant is entitled to redress. These determinations must be made by the district court. Thus, any objection that the poverty affidavit fails to state the nature of the action, defense, or appeal, and the belief that the affiant is entitled to redress, must also be raised in the district court. As indicated in *Flora, supra,* such objections may be waived.

■ Accordingly, we determine that if a request to proceed in forma pauperis is granted by the district court, this court obtains jurisdiction when the notice of appeal is timely filed, and any failure of the affidavit to state the nature of the action or that the affiant is entitled to redress under § 25-2301.01 will not divest this court of jurisdiction. In Dallmann's case, the record contains an order from the district court sustaining his motion to proceed in forma pauperis. Thus, Dallmann was granted in forma pauperis status, and we have jurisdiction over the appeal.

### STOP OF VEHICLE

Dallmann contends that the officers stopped his vehicle in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. Dallmann contends that the investigators had decided, without probable cause, to follow and stop him before he left the convenience store and that the stop based on his failure to turn on his headlights was a pretext to obtain consent to search the vehicle. This contention is without merit.

In *Whren v. United States,* 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), the Court addressed the argument that a

stop made pursuant to a traffic violation was actually a pretext for a search. The Court made clear that the standard to be applied is whether the officers had probable cause to stop the vehicle and that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers involved. The Court further explained that prior cases involving a pretext to search were cases in which the Court was addressing the validity of a search in the absence of probable cause.

Based in part on *Whren, supra,* we recently held that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Bartholomew,* 258 Neb. 174, 602 N.W.2d 510 (1999). If an officer has probable cause to stop a violator, the stop is objectively reasonable, and any ulterior motivation on the officer's part is irrelevant. *Id.*

The officers in this case stopped Dallmann because he was driving at night without headlights. Whether the officers would have had probable cause to stop Dallmann if he had not violated a traffic regulation is irrelevant. Thus, the district court was correct in concluding that the officers had probable cause to stop Dallmann's vehicle.

### SEARCH OF DALLMANN AND VEHICLE

Dallmann next contends that his consent to the search of his clothing and his vehicle was not voluntarily given. In particular, Dallmann argues that he was in a "custodial atmosphere," brief for appellant at 29, that he was unaware he had the right to refuse to consent, and that under the totality of the circumstances, his consent was the result of duress or coercion.

The right to be free from an unreasonable search and seizure, as guaranteed by the 4th and 14th Amendments to the U.S. Constitution and by article I, § 7, of the Nebraska Constitution, may be waived by the consent of the citizen. *State v. Ready,* 252 Neb. 816, 565 N.W.2d 728 (1997). In order for a consent to search to be effective, it must be a free and unconstrained choice and not the product of a will overborne. *Id.;* *State v. Prahin,* 235 Neb. 409, 455 N.W.2d 554 (1990). The consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *Id.* The Fourth Amendment, however, does not require that a

lawfully seized defendant be advised that he or she is legally "free to go" before the defendant's consent to search will be recognized as voluntary. *Ready, supra,* citing *Ohio v. Robinette,* 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). In addition, an officer need not give any warning to a citizen that he or she may freely refuse a request to search. *State v. Aguirre-Rojas,* 253 Neb. 477, 571 N.W.2d 70 (1997).

We agree with the district court that under the totality of the circumstances, Dallmann's consent to search his clothing for drugs and his vehicle for weapons was voluntary. Nothing in the record indicates that the investigating officers used coercion or threats of force, either express or implied, to obtain Dallmann's consent. The officers were not required to inform Dallmann that he had a right to refuse the request to search.

Although Dallmann consented to a search of his vehicle for weapons, the address book was found in a place where a weapon could be concealed. In addition, the expanded scope of the search of the vehicle took place when Dallmann was placed under arrest. When a police officer has made a lawful custodial arrest of the occupant of a vehicle, the officer may, as a contemporaneous incident of the arrest, search the passenger compartment of that vehicle. The officer may also examine the contents of any containers found within the passenger compartment. *State v. Roth,* 213 Neb. 900, 331 N.W.2d 819 (1983). We conclude that the evidence was obtained through lawful searches. Thus, the district court did not err in overruling Dallmann's motion to suppress evidence.

### MOTION TO SUPPRESS STATEMENTS

Dallmann contends that his statements to the officers should have been suppressed because he was not advised of his *Miranda* rights.

*Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements stemming from the custodial interrogation of a defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *State v. Cody,* 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Brunzo,* 248 Neb. 176, 532 N.W.2d 296 (1995). Thus, in order to safeguard an uncoun-

seled individual's Fifth Amendment privilege against self-incrimination, suspects interrogated while in police custody must be apprised of certain rights. Specifically, suspects must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. *State v. Veiman*, 249 Neb. 875, 546 N.W.2d 785 (1996).

*Miranda* warnings are required only where there has been such a restriction on one's freedom as to render one "in custody." *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000). Further, *Miranda* does not require that volunteered statements be suppressed in the absence of the warnings. Any statement given freely and voluntarily without compelling influences is admissible in evidence. *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985), citing *Miranda, supra*. See, also, *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000) (volunteered statement admissible in evidence). Thus, an in-custody statement voluntarily made without the benefit of *Miranda* warnings is admissible if it is not the product of interrogation. *Taylor, supra*.

In this case, Dallmann was under arrest when he stated that he was not going to use the drugs himself, but had planned to sell them. One is in custody for *Miranda* purposes when there is a formal arrest or a restraint on one's freedom of movement of the degree associated with such an arrest. See *Burdette, supra*. Dallmann, however, did not make the statement in response to any questions or actions on the part of the investigating officers. The record shows that Dallmann spontaneously made the statement. Thus, we agree with the district court that the statement was volunteered. Because the statement was volunteered, it was admissible into evidence even though it was made without Dallmann's having been advised of his *Miranda* rights.

The district court concluded that Dallmann's statements about the item in his shoe and the contents of his cigarette package were made when he was not in custody and, thus, were admissible on that basis. Two inquiries are essential to the determination of whether an individual is in custody for *Miranda* purposes: (1) an assessment of the circumstances surrounding the interrogation and (2) whether a reasonable person would have felt that he or she was not at liberty to terminate the inter-

rogation and leave. *Burdette, supra.* What is dispositive in determining whether *Miranda* warnings should have been given is whether a reasonable person would have felt free to leave under the circumstances. *Id.*

We have held that an individual temporarily detained pursuant to an investigatory traffic stop is not in custody for purposes of *Miranda. State v. Bowers,* 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Holman,* 221 Neb. 730, 380 N.W.2d 304 (1986). See, also, *Berkemer v. McCarty,* 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (drawing analogy between stop under *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and traffic stop and indicating that *Terry* stops are not subject to dictates of *Miranda*); *U.S. v. Sullivan,* 138 F.3d 126 (4th Cir. 1998); *U.S. v. Boucher,* 909 F.2d 1170 (8th Cir. 1990). Further, *Miranda* warnings are not required for general on-the-scene questioning as to facts surrounding a crime. *U.S. v. Klein,* 13 F.3d 1182 (8th Cir. 1994). When a person is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render the driver in custody and entitled to *Miranda* warnings. *Bowers, supra.*

A brief, voluntary pat-down search generally does not constitute custody for purposes of *Miranda.* See, e.g., *U.S. v. Wyatt,* 179 F.3d 532 (7th Cir. 1999); *State v. Graca,* 142 N.H. 670, 708 A.2d 393 (1998). Further, the detainment of an individual during the consensual search of his or her vehicle has also been held not to constitute custody for *Miranda* purposes. See, e.g., *May v. Commonwealth,* 3 Va. App. 348, 349 S.E.2d 428 (1986) (person not in custody when he consented to search of trunk of his vehicle). Although courts have indicated that *Miranda* warnings may be required under some circumstances before a suspect is actually arrested, where police officers use no coercion or threat of force and any continued detention is at the consent of the suspect, *Miranda* warnings are not required. See *U.S. v. Richie,* 35 F.3d 1477 (10th Cir. 1994) (*Miranda* warnings not required when suspect consented to search of his home by multiple police officers). Compare *U.S. v. Perdue,* 8 F.3d 1455 (10th Cir. 1993) (*Miranda* warnings required where police forced suspect out of vehicle at gunpoint and held him face down on the ground at gunpoint during questioning, while

police helicopters hovered overhead). Thus, it is where a suspect is detained only to an extent analogous to an arrest that *Miranda* warnings are required. See *Sullivan, supra.*

In this case, Dallmann was initially stopped for a traffic violation and then consented to a search of his vehicle for weapons and a search of his clothing for drugs. Although there were multiple police officers present, the officers used no threats of force or coercion to obtain Dallmann's consent to search. Nothing in the record indicates that Dallmann believed he was under arrest when he consented to the searches or that Dallmann was not free to leave. We conclude that under the circumstances of this case, Dallmann was not in custody when he made the statement that the item in his shoe fell out of the tire and when he made the statement about the contents of the cigarette package. Accordingly, the officers were not required to advise Dallmann of his *Miranda* rights before these statements were made. The district court did not err in overruling Dallmann's motion to suppress statements. Furthermore, the evidence was sufficient beyond a reasonable doubt to sustain the conviction.

### SENTENCING

Dallmann contends that the district court erred in imposing an excessive sentence. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

Dallmann was convicted of a Class IV felony. See § 28-416. A Class IV felony carries a statutory maximum of 5 years' imprisonment, a $10,000 fine, or both, and no minimum. Dallmann's sentence was within the statutory limits, and we conclude that the district court did not abuse its discretion when sentencing Dallmann. Accordingly, Dallmann's assignment of error regarding sentencing is without merit.

### CONCLUSION

We determine that an appellate court acquires jurisdiction of an in forma pauperis criminal appeal when the notice of appeal is filed. When a request to proceed in forma pauperis has been

granted, the failure of the affidavit to state the nature of the action or a statement that the affiant is entitled to redress will not divest the appellate court of jurisdiction. We conclude that Dallmann's assignments of error are without merit. Accordingly, we affirm.

AFFIRMED.