_____

No. 96-1072SI

_____

United States of America,      *
                             *

          Appellee,       *    Appeal from the United States
                             *    District Court for the Southern
    v.                      *    District of Iowa.
                             *

Theophilis Bell,           *
                             *

          Appellant.      *

_____

Submitted:  April 9, 1996

Filed:  June 19, 1996

_____

Before FAGG, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

Theophilis Bell appeals the district court's denial of his motion to suppress cocaine base seized after his arrest on a traffic charge.  We affirm.

Bell was spotted riding a bicycle at night without a headlamp by two Des Moines police officers assigned to a drug and gang investigation unit. Bell was in a high-crime area where police had adopted a policy of not tolerating any statutory violations to combat drug activity.  The officers knew Iowa law prohibits riding a bicycle without a headlamp between sunset and sunrise.  Iowa Code §§ 321.397, .384 (1995).  The officers also knew Bell was a gang member who had been arrested before for possession of cocaine base, and suspected gangs were using bicycles to transport drugs in the area.  The officers decided to arrest Bell for the bicycle violation.  They stopped Bell and patted him down for their safety.  During the pat-down, one of the officers asked Bell who he was, who

owned the bicycle, and where he was coming from.  After giving his name, Bell told the officers he did not know who owned the bicycle and he was coming from the TNT Lounge.  Based on police surveillance, the officers suspected the TNT was a hub for drug couriers using bicycles.  The officers placed Bell under arrest on the traffic charge.  One of the officers started to search Bell and asked Bell whether there was anything in his shoes.  Bell said, "no," and asked the officer whether he would like to check.  Bell then removed his shoes and tossed away a package containing cocaine base.

The officers retrieved the cocaine base, and the Government later filed drug charges against Bell.  Bell filed a motion to suppress the cocaine base, and the district court denied Bell's motion.  Bell then pleaded guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal the denial of his suppression motion.

Bell argues the cocaine base should be suppressed as the product of an unlawful stop and arrest.  According to Bell, the traffic stop and arrest were merely a pretext to investigate drug activity.  Although a pretextual traffic stop violates the Fourth Amendment, any traffic violation, even a minor one, gives an officer probable cause to stop the violator.  United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995).  If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.  Id.; Whren v. United States, 1996 WL 305735, at *5 (U.S. June 10, 1996).  Here, the officers had probable cause to believe Bell had violated the bicycle headlamp statute.  Indeed, Bell does not dispute the violation.  Because the officers had probable cause, the stop was objectively reasonable.  Whren, 1996 WL 305735, at *8.  The officers' suspicion that Bell was involved in drug activity does not affect the stop's objective reasonableness.  Id.  The district court's finding that the stop

was not pretextual is not clearly erroneous.  <u>Pereira-Munoz</u>, 59 F.3d at 791.  Given the existence of probable cause, the officers could also arrest Bell.  <u>United States v. Franklin</u>, 728 F.2d 994, 997 (8th Cir. 1984).  Thus, the district court correctly held the cocaine base seized in the search incident to Bell's arrest is admissible.  <u>Id.</u>

Bell also contends his arrest was invalid because it violated equal protection.  Bell concedes Iowa's bicycle headlamp statutes are facially race neutral, but contends state police officers are applying the statutes in a discriminatory way.  According to Bell, he established the vast majority of bicycle headlamp offenders are white, but the officers are only enforcing the law against black offenders.

The Equal Protection Clause precludes selective enforcement of the law based on race.  <u>Whren</u>, 1996 WL 305735, at *5; <u>Britton v. Rogers</u>, 631 F.2d 572, 577 (8th Cir. 1980), <u>cert. denied</u>, 451 U.S. 939 (1981).  A person claiming unequal enforcement of a facially neutral statute must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose.  <u>United States v. Armstrong</u>, 116 S. Ct. 1480, 1487 (1996); <u>see</u> <u>United States v. Brown</u>, 9 F.3d 1374, 1375-76 (8th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1568 (1994).  To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them. <u>Brown</u>, 9 F.3d at 1376; <u>see</u> <u>Armstrong</u>, 116 S. Ct. at 1487.  To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race.  <u>See</u> <u>Brown</u>, 9 F.3d at 1376.  If the claimant shows both discriminatory effect and purpose, the burden shifts to the Government to show the same enforcement decision would have been made even if the discriminatory purpose had not been considered. <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 819 n.2 (4th Cir. 1995).  The district court found Bell failed

to show either a discriminatory effect or a discriminatory purpose.

The district court did not commit clear error in finding the statute's enforcement had no discriminatory effect on blacks. Although Bell showed the only people arrested for violating the statute during a certain month were black, Bell failed to show white bicyclists also violated the statute and police chose not to arrest them. A bicycle shop owner testified there are no lights on 98% of all bicycles in the Des Moines area, which is populated predominantly by white people, but Bell presented no evidence about the number of white bicyclists who ride their bicycles between sunset and sunrise. Because Bell failed to show he was treated differently than members of other races, Bell did not prove discriminatory effect.

We also see no clear error in the district court's finding that the officer's decision to enforce the statute against Bell was not based on Bell's race. The officer testified that within the month surrounding Bell's arrest, there were five arrests under the statute. All of the arrests were made in one targeted high-crime area and all of the arrestees were black. Nevertheless, the officer explained the area was populated primarily by minorities, so it is not surprising that only black people were arrested there. See Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995) (even though more blacks than whites were arrested for drunk driving near club owned by blacks, raids of club did not violate equal protection rights of owners and black patrons). "Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement." Id. In addition, police had adopted a "zero tolerance" policy in the area of Bell's arrest to combat a particular problem there: illegal drug activity.

We affirm the denial of Bell's motion to suppress.

-4-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.