# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2547

_____

United States of America,

    Appellee,

   v.

Jerome Powell Sims,

    Appellant.

*   Appeal from the United States
*   District Court for the Southern
*   District of Iowa.

*   [UNPUBLISHED]

_____

Submitted:  November 1, 2001

Filed:  December 3, 2001

_____

Before BEAM, BYE and, RILEY, Circuit Judges.

_____

PER CURIAM

Following a conditional guilty plea of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846, Jerome Powell Sims appeals the district court's[1] denial of his motion to suppress evidence and his sentence.  We affirm the judgment and sentence of the district court.

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

This is a companion case to <u>United States v. Booker</u>, 269 F.3d 930 (8th Cir. 2001). Rather than reproducing the factual background a second time in its entirety here, we will set forth only the additional facts relevant to the issues Sims raises on appeal.

## I. The Stop and Search

Sims argues that Trooper Thulen did not have a valid basis to stop the car in which he was passenger. He also argues that since the law enforcement officer had a drug dog in his squad car when he stopped the car, the stop was pretextual. We review the district court's conclusions of law regarding the denial of a motion to suppress de novo, and its findings of fact for clear error. <u>United States v. Raines</u>, 243 F.3d 419, 421 (8th Cir. 2001).

At the evidentiary hearing, Trooper Thulen testified that he stopped the car for speeding (going 71 miles per hour in a posted 65 mile per hour zone), and so indicated in his report. The district court found the officer's testimony credible, and held the stop of the car valid. Although Sims argues the car was not speeding, his argument is unsubstantiated. With respect to Sims's additional argument, even if Trooper Thulen had an ulterior motive for stopping the car, we have said that "[i]f the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." <u>United States v. Bell</u>, 86 F.3d 820, 822 (8th Cir. 1996). Here, because of the traffic violation, the officer had probable cause to stop the car. <u>Id.</u> ("Any traffic violation, even a minor one, gives an officer probable cause to stop the violator."). Therefore, we reject Sims's arguments relating to the stop of the car.

Sims next argues that Trooper Thulen exceeded the scope of the stop by searching the car without reasonable suspicion. This argument is foreclosed by our holding in <u>Booker</u>, where we affirmed the district court's finding that Trooper Thulen

saw the cannabis in Booker's car before the traffic stop was completed, and held that such sighting generated probable cause to justify the subsequent search of the car. See Booker, 269 F.3d at 931.[2] Furthermore, we note that the record indicates the officer observed cannabis residue on Sims's back and on his pants after the stop and before the car search. See App. 12-13. Thus, Sims's argument is without merit.

## II.    The Sentence

On February 11, 2000, police seized $11,050 in cash and 4.4 grams of cocaine powder from a car in which Sims was a passenger. On February 21, 2000, police seized 488 grams of cocaine base from a car in which Sims was once again a passenger. The district court converted the cash seized into its drug equivalent in grams of cocaine base, and sentenced Sims to 72 months imprisonment. Sims raises two arguments with respect to his sentence. First, he argues the district court should have converted the cash seized into cocaine powder and not cocaine base. Second, he argues the district court should have converted all the drugs to their marijuana equivalent because there was more than one controlled substance attributed to him. Sims contends that these errors yielded a base offense level of 36 instead of a base offense level of 34.

The correct application of the sentencing guidelines is a question of law subject to de novo review, United States v. Collins, 104 F.3d 143, 144 (8th Cir. 1997), but a district court's findings of fact regarding the quantity of drugs attributed to a defendant is reviewed for clear error. United States v. Maggard, 156 F.3d 843, 848 (8th Cir. 1998). The government need only prove the quantity of drugs attributed to

---

[2]The government raises an additional argument that, as a passenger, Sims does not have "standing" to challenge the stop or the search. We need not address this additional argument because Trooper Thulen had probable cause to stop and search the car.

a defendant by a preponderance of the evidence.  United States v. Padilla-Pena, 129 F.3d 457, 467 (8th Cir. 1997).

The district court's decision to convert the cash seized from the February 11, 2000 stop into its drug equivalent in grams of cocaine base instead of cocaine powder was not clearly erroneous.  The district court noted the facts of the case, including the objective of the conspiracy to which Sims pleaded guilty (distribution of cocaine base, not cocaine powder), and concluded that conversion of the cash into its cocaine base equivalent was warranted.  It was reasonable for the district court to determine from the two vehicle stops that Sims was traveling between Chicago and Des Moines, and that Sims sold cocaine base in Des Moines and with the proceeds returned to Chicago to purchase more cocaine base.  See United States v. Haynes, 881 F.2d 586, 592 (8th Cir. 1989) (converting amount of powder cocaine into crack for purposes of sentencing because evidence showed defendant was "in the business of selling crack cocaine and not powder cocaine.").  Because the evidence seized from the two stops permits this finding, we cannot say the district court erred in converting the $11,050 into grams of cocaine base.

Though the district court did not err in converting the cash into cocaine base, Sims contends that the district court should have converted the drugs into their marijuana equivalent.  We agree.  The Guidelines provide "a means of combining differing controlled substances to obtain a single offense level.  In each case, [the court must] convert each of the drugs to its marihuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level."  See U.S.S.G. 2D1.1 cmt. n.10 (2001).  Here, the district court attributed two substances (cocaine base and cocaine powder) to Sims, but failed to convert these drugs into their marijuana equivalent. Nevertheless, Sims's base offense level was not affected by the district court's failure to convert the drugs into their marijuana

equivalent.[3]  Indeed, the only way Sims's base offense level could be calculated at level 34, as he contends it should be, is if the district court converted the cash seized into its drug equivalent in grams of cocaine powder, not cocaine base.  As we explained previously, the district court's decision to convert the cash into its drug equivalent in grams of cocaine base was not erroneous.  Although the district court should have converted the two types of controlled substances (cocaine base and cocaine powder) into their marijuana equivalent, see U.S.S.G. § 2D1.1 cmt. n.10, the court's failure to do so did not affect Sims's base offense level.

Accordingly, we affirm the judgment of the district court with respect to Sims's motion to suppress evidence and his sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The 488 grams of cocaine base (recovered from the February 21, 2000 stop) is equivalent to 9,760 kilograms of marijuana.  See U.S.S.G. § 2D1.1 cmt. n.10.  The 261.05 grams of cocaine base (representing the $11,050, which was recovered from the Feb. 11, 2000 stop and  converted by the district court to its drug quantity) is the equivalent of 5,221 kilograms of marijuana.  The 4.4 grams of cocaine powder (also recovered from the Feb. 11, 2000 stop) is the equivalent of .88 kilograms of marijuana.  See id.  The total of these marijuana quantities nets 14,981.88 kilograms of marijuana, which results in a base offense level of 36 (at least 10,000 kilograms of marijuana but less than 30,000 kilograms of marijuana).  See U.S.S.G. § 2D1.1(c)(2).