UNITED STATES of America,
Plaintiff,

v.

Kevin L. COTTON, Defendant.

No. 4:02CR3025.

United States District Court,
D. Nebraska.

June 26, 2002.

Michael J. Hansen, Federal Public Defenders Office, Omaha, NE, for Defendant.

Janice M. Lipovsky, Asst. U.S. Atty., Lincoln, NE, for U.S.

## ORDER

STROM, Senior District Judge.

This matter is before the Court on defendant's objection (Filing No. 19) to the magistrate judge's report and recommendation (Filing No. 18), wherein the magistrate judge recommends that defendant's "motion to dismiss, or alternatively, to suppress" be denied in part and granted in part. The effect of the magistrate judge's report and recommendation is that the motion to dismiss be denied and that the motion to suppress be denied except as to the questions and answers which occurred after Mr. Cotton was handcuffed, during which the trooper elicited information about the ownership, type and amount of the drugs found in the vehicle as this constituted custodial interrogation without having been given his *Miranda* warnings.

The Court has conducted a *de novo* review of the defendant's motion, the transcript of the hearing before the magistrate judge held on May 2, 2002 (Filing No. 17), the report and recommendation of the magistrate judge, defendant's objection to said report and defendant's brief in support of his objections. A review of the transcript included viewing the exhibits and in particular the tape of the stop which occurred on December 24, 2001. Having completed this review, the Court finds that the magistrate judge's report and recommendation should be approved and adopted by the Court. Accordingly,

IT IS ORDERED:

1) The report and recommendation of the magistrate judge is approved and adopted.

2) Defendant's objection is overruled and his motion to dismiss is denied. His motion to suppress is granted to the extent that statements made by defendant at the scene of the traffic stop and in response to questioning by the troopers during and after Mr. Cotton was handcuffed are suppressed.

3) Trial of this matter is scheduled for: **Monday, August 26, 2002, at 9 a.m.** in Courtroom No. 2, Denney Federal Building, Lincoln, Nebraska, as soon thereafter as may be called by the Court. The ends of justice will be served by continuing this case and outweigh the interests of the public and the defendant in a speedy trial. The additional time between June 26, 2002, and August 26, 2002, shall be deemed excludable time in any computation of time under the requirement of the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(A) & (B).

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

The "Motion to Dismiss, or Alternatively, to Suppress" filed by the defendant Kevin L. Cotton, filing 9, was heard on May 3, 2002. Defendant seeks to suppress any and all evidence gathered as a result of a stop and subsequent search of his person and of the vehicle he was driving on December 24, 2001. The defendant claims that his Fourth Amendment rights were violated in that Trooper Michael Rathe had no basis for reasonable suspicion or probable cause to believe that any violation of the law had occurred, that he unlawfully stopped defendant's vehicle, and that he unlawfully searched defendant's person[1] and the vehicle he was driving. The defendant further claims that he was subjected to custodial interrogation prior to being provided warnings as required under *Miranda*, and his responses to this questioning must be suppressed under the Fifth Amendment.

For the reasons set forth herein, I shall recommend denying defendant's claim that evidence be suppressed under the Fourth Amendment. Regarding defendant's motion based on the Fifth Amendment, I shall recommend that statements made by the defendant prior to being handcuffed are not subject to suppression. I shall, however, grant defendant's motion to the extent that it requests suppression of statements made in response to the officers' questioning during and after the time when defendant was placed in handcuffs.[2]

On December 24, 2001[3], at approximately 4:30 p.m., the defendant was driving a 1975 Chevy Blazer westbound on Highway 6 between Waverly and Lincoln, Nebraska. The roadway at this location is a four-lane divided highway. The defendant was traveling in the right lane within the speed limit. The weather was clear and the sun was beginning to set in the west, directly in the line of vision for westbound drivers on Highway 6.

At that time Trooper Rathe was also driving westbound on Highway 6 at this location. He pulled into the left lane to pass the defendant to stop a different vehicle traveling ahead of the defendant for speeding. As he passed the vehicle driven by the defendant, he noted that due to their width, the tires on the vehicle extended approximately four inches beyond the confines of the vehicle's fenders. Although he still intended to stop the speeding vehicle, Trooper Rathe noted that the width of tires on the vehicle defendant was driving created a violation of *Neb.Rev.Stat.* § 60–6,283. The tires were large, off-road tires

---

1. Although the defendant's motion challenges the admissibility of evidence obtained from the search of the defendant's person, defendant's brief does not address this argument. Further, no evidence was presented at the hearing regarding the search of defendant's person during this traffic stop or at the time of his arrest. Since the claim was not discussed in defendant's brief, and no evidence was adduced on the issue, I consider abandoned any argument for exclusion of evidence obtained from the search of Mr. Cotton at the scene of this traffic stop.

2. Officer Rathe admitted that *Miranda* warnings were not given to the defendant when he was placed in handcuffs. The government

has conceded that statements made in response to the officer's questioning while the defendant was being handcuffed and, later, while he was being subdued by the officers in the road ditch after defendant tried to flee, were custodial interrogations. The government conceded at the hearing that statements by the defendant in response to these interrogations should be suppressed under the Fifth Amendment.

3. The date listed in the motion to suppress was December 25, 2001. By oral motion and stipulation of the parties, the date was corrected and changed to December 24, 2001 at the beginning of the hearing.

designed to be driven over muddy terrains, and were taller and wider than tires placed on this vehicle by the factory. Because the width of the tire extended beyond the fender, and the vehicle had no mud flaps or splash aprons, there was nothing to cover the portion of the tire extending outside of the fender area and nothing to prevent this tire area from splashing up water and mud.

Trooper Rathe chose not to continue pursuing the speeding vehicle, but decided to stop defendant's vehicle for the § 60–6,283 violation instead. He slowed his marked patrol car and pulled in behind the vehicle driven by the defendant. When this occurred, defendant briefly stepped on the brakes and Trooper Rathe noticed that the vehicle's right brake light was not working. Trooper Rathe activated his lights and initiated a traffic stop. This stop and the occurrences thereafter were videotaped by the equipment in Trooper Rathe's patrol car, although the quality of the images depicted on the videotape is poor because, during this traffic stop, the camera was facing directly into the setting sun.[4] Trooper Rathe forgot to activate his microphone and therefore the audio portion of the tape is missing for a large portion of the encounter.

Trooper Rathe exited his vehicle and went to the passenger side window to speak with its occupants. Antoine Young was a passenger in the vehicle and motioned to the trooper that the window could not be lowered. Trooper Rathe motioned for the passenger to open the door instead. The trooper stepped back to provide clearance for the door to open and when it opened, Trooper Rathe noticed an intense odor of burnt marijuana. At Trooper Rathe's request, Mr. Young provided the officer with an identification card or driver's license and the defendant provided his driver's license. Trooper Rathe was also given the registration and insurance card for the vehicle which revealed that neither the driver nor the passenger owned the vehicle. The defendant, Mr. Cotton, who was the driver, was asked to step out of the vehicle. Standing at the rear of the vehicle with the defendant, Trooper Rathe explained that the vehicle's tire width was excessive and pointed out the non-operating right brake light. Defendant Cotton was then told to have a seat in the patrol car while Trooper Rathe prepared a vehicle defect ticket for the tire and brake light violations. Mr. Young remained seated in the front passenger side of the stopped vehicle.

While in the patrol car with the defendant, Trooper Rathe checked by radio the defendant's driving history, and for local information on any outstanding warrants or criminal history on the defendant and Mr. Young. The dispatcher responded that the defendant Cotton had a history of prior drug arrests in Lincoln. While seated in the patrol car with the defendant, Trooper Rathe told Mr. Cotton that he had smelled the burnt marijuana odor emanating from the vehicle, and asked the defendant if he had been smoking marijuana and if there was any marijuana in the vehicle or on the defendant's person. Defendant Cotton responded, "No" to each of these questions. Trooper Rathe told Mr. Cotton that he was planning to search Mr. Cotton and the vehicle. The defendant then produced a small amount of marijuana from his right coat pocket, laid it on the patrol car dashboard, and stated that he had smoked marijuana but that Mr. Young was not involved in any drug use or possession.

---

4. The videotape, received as Exhibit 103, is a copy of the original videotape. The parties have compared this copy with the original and have verified that the copy is a complete duplicate.

Trooper Rathe exited the patrol car and told Mr. Young to step out of the stopped vehicle. Mr. Young complied and was pat searched to look for weapons and drugs. He was then told to stand in the ditch about thirty feet in front of the vehicle while the vehicle was searched.

Trooper Rathe jumped up into the vehicle, which had been elevated by a "lift kit," and found a package containing a white powdery substance the size of a golf ball in the center console of the vehicle. This substance appeared to Rathe to be crack cocaine. Upon finding this suspected drug in the vehicle, Trooper Rathe motioned for Mr. Young to approach the officer. While Trooper Rathe was handcuffing Mr. Young, Mr. Cotton jumped out of the patrol car and moved quickly toward Trooper Rathe, stating that the drugs found in the vehicle were his and that Mr. Young had nothing to do with them. Trooper Rathe was not questioning the defendant in any way when these statements were made, but was instead repeatedly directing the defendant to get back into the patrol car. The defendant eventually complied. Trooper Rathe then radioed for help and placed Mr. Young on his knees in the ditch at a distance in front of the stopped vehicle.

Trooper Rathe returned to the patrol car to retrieve his spare set of handcuffs, and placed the package of white substance he had found on the hood of his patrol car. Trooper Rathe obtained the spare handcuffs, told the defendant to step out of the car and began handcuffing him behind the back. The defendant was not given his *Miranda* warnings at this time. During the handcuffing, Trooper Rathe questioned the defendant about the drugs found in the vehicle. The defendant responded that the drug found was his, that it was crack cocaine, and that it weighed approximately 25 grams.

Trooper Simonson arrived to assist Trooper Rathe, and Mr. Young was placed in Trooper Simonson's patrol car. Trooper Rathe heard a thumping sound and turned to find that defendant Cotton was no longer in the patrol car. He was holding his handcuffs in front of him, grabbed the package of white powder off the patrol car hood and started running away through the ditch. Trooper Rathe ran after the defendant and tackled him, but Mr. Cotton continued to resist, until he was ultimately subdued and re-handcuffed.

Troopers Rathe and Simonson could not find the package of white powder and asked the defendant where the drugs were and if he had swallowed them. The defendant did not verbally respond in words but made a "m-m-m-m" sound with his mouth closed and appeared to be experiencing dry heaves and convulsive movements. Worried that the defendant had swallowed or attempted to swallow a potentially dangerous amount of crack cocaine, the officers called for an ambulance, and the defendant was transported to a hospital. Ultimately, with the use of a police canine, the package of white powder was found in the road ditch.

The vehicle driven by the defendant was then thoroughly searched, and cell phones and a bag of hollowed-out cigars were retrieved.

In March 2002 the defendant took photographs of the vehicle in an attempt to depict that the tires were not wider than the vehicle's fender area. (See Exhibits 101, 102, 104, and 105). The defendant testified that the tires had not been changed between the time of his arrest and the date the photographs were taken. However, the defendant does not own the vehicle and it was not in his constant possession following this arrest. Trooper Rathe testified that at the time of the traffic stop, the tires were wider than

those depicted in the photographs taken by the defendant three months later. Both parties argue that the videotape of the traffic stop fully resolves the issue, with the government arguing that it proves the tires were too wide and the defendant arguing that it depicts tires in compliance with the law.

The videotape confirms that a right rear brake light was not working. However, for the majority of the videotape footage, the trooper's patrol car was parked directly behind the stopped vehicle, and the angle of this view does not permit one to see the width of the tires compared to the fender. When the patrol car is turning in behind the stopped vehicle to park and when it is departing from that parked position, it appears the tires do extend beyond the fender area. Although this footage is less than clear, combined with the credible testimony of Trooper Rathe, the evidence supports a finding that the tires were wider than the confines of the vehicle's fenders at the time of the traffic stop and were not the size depicted on defendant's Exhibits 101, 102, 104, and 105.

■ The defendant claims that any evidence arising from this traffic stop, and the questioning and search of his vehicle during that stop, must be excluded. Under *Terry*, the issue of whether an investigatory detention or traffic stop complies with the Fourth Amendment depends upon two factors—whether the stop was justified at its inception, and whether the officer's actions during the stop were reasonably related in scope to the circumstances that justified the interference in the first place. *U.S. v. Navarrete–Barron*, 192 F.3d 786, 790 (8th Cir.1999); *United States. v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994). An investigatory, or *Terry*, stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. When justifying a particular stop, police officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *U.S. v. Navarrete–Barron*, 192 F.3d at 790.

■ It is well established that any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the vehicle. *U.S. v. Alcantar*, 271 F.3d 731, 736 (8th Cir.2001). See also, *United States v. Neumann*, 183 F.3d 753, 755 (8th Cir.1999); *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996); *United States v. Pereira–Munoz*, 59 F.3d 788, 791 (8th Cir.1995). "Courts are not to consider the motive for a stop as long as the reason for the stop is valid." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir.2001). Although a traffic stop cannot be pretextual, "so long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop." *Alcantar*, 271 F.3d at 736. See also, *Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Caldwell*, 97 F.3d at 1067; *United States v. Bell*, 86 F.3d 820, 822 (8th Cir.1996).

■ The defendant has claimed that there was no objective basis for the traffic stop which led to his arrest. However, Trooper Rathe had probable cause to stop the defendant for violating *Neb.Rev.Stat.* § 60–6,283 which provides:

Every new motor vehicle or semitrailer purchased after January 1, 1956, and operated on any highway in this state shall be equipped with fenders, covers, or devices, including flaps or splash aprons, unless the body of the vehicle affords adequate protection to effectively minimize the spray or splash of water

or mud to the rear of the motor vehicle or semitrailer.

This statute is part of the Nebraska Rules of the Road, (*Neb.Rev.Stat.* § 60–601), the violation of which is a traffic infraction, (*Neb.Rev.Stat.* § 60–682), and subject to the penalties set forth in *Neb.Rev.Stat.* § 60–689. See, *State v. Bartholomew*, 258 Neb. 174, 602 N.W.2d 510 (1999) (dragging muffler justifies traffic stop and evidence found as a result of that stop is not subject to suppression under the Fourth Amendment.) Although the defendant argues that § 60–6,283 can be violated only when there is water or mud on the road surface, the statute regulates the vehicle's equipment. The equipment required by law is not contingent upon whether it is ever used or needed. A vehicle not properly equipped for wet or rainy weather in accordance with the statutes is in violation of Nebraska law even on a dry day.

The vehicle Mr. Cotton was driving was manufactured after 1956. Therefore the standards set forth in *Neb.Rev.Stat.* § 60–6,283 were applicable to this vehicle. Due to the size of tires placed on the vehicle, its fenders did not cover the tires and could not effectively minimize spraying and splashing of water from the portion of the tire extending beyond the confines of the fender. No mud flap or splash apron was present to compensate for the width of the tire and the fact that a portion of the tire was not covered by any part of the vehicle's body and frame. As such, the vehicle was not adequately equipped to "effectively minimize the spray or splash of water or mud to the rear of the motor vehicle tires." *Neb.Rev.Stat.* § 60–6,283. This violation of Nebraska law justified the traffic stop of the vehicle the defendant was driving. See, *State v. Viveros*, 1999 WL 311745 at *3 (Wash.App. Div. 3 1999) (trooper had probable cause to stop defendant because his "jacked up" truck had oversized tires and lacked mud flaps sufficient to "minimize the spray or splash of water or mud

from the roadway to the rear of the vehicle."); *$217,590.00 in U.S. Currency v. State*, 970 S.W.2d 660 (Tex.App.1998), rev'd on other grounds, 18 S.W.3d 631 (Tex.Sup.Ct.2000) (officer had probable cause to stop truck for mud flap violation and reasonable suspicion to detain driver for purpose of requesting search of vehicle).

 Trooper Rathe advised the defendant of the tire and brake light violations and requested Mr. Cotton to sit in the patrol car while the officer prepared a vehicle defect ticket. Trooper Rathe also checked by radio the validity of the defendant's license and for any local criminal history information on the defendant and Mr. Young.

A police officer, incident to investigating a lawful traffic stop, may request the driver's license and registration, request that the driver step out of the vehicle, request that the driver wait in the patrol car, conduct computer inquiries to determine the validity of the license and registration, conduct computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and make inquiries as to the motorist's destination and purpose. . . . The officer may detain the driver as long as reasonably necessary to conduct these activities and to issue a warning or citation.

*Jones*, 269 F.3d at 924–25 (internal citations omitted). See also, *United States v. Pulliam*, 265 F.3d 736, 740 (8th Cir.2001); *United States v. Poulack*, 236 F.3d 932, 935 (8th Cir.2001); *U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d at 647. While the officer completes the routine but somewhat time-consuming task of checking vehicle, driver, warrant and criminal history, the officer may ask the motorist routine questions concerning the intended destination, the purpose of the trip, or whether the

motorist will consent to a search of the vehicle, and the officer may act on whatever information is volunteered. *U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d at 647. (See also, *United States. v. Ramos*, 42 F.3d at 1163; *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993); *United States v. Richards*, 967 F.2d 1189, 1192–93 (8th Cir.1992)).

■ As part of his conversation with the defendant, Trooper Rathe asked Mr. Cotton if he or the passenger had been smoking marijuana, and whether marijuana was in the vehicle or on his person. Although the defendant initially answered "no" to all of these questions, Trooper Rathe had noticed an intense odor of burnt marijuana when the vehicle door was open. When the officer advised the defendant that both he and his vehicle would be searched, Mr. Cotton produced a package of marijuana from his coat pocket. Although the defendant contends that this evidence is inadmissible as the product of custodial interrogation without *Miranda* warnings, law enforcement officers do not violate the Fourth Amendment by asking whether the driver possesses or the vehicle contains illegal drugs. *United States v. Morgan*, 270 F.3d 625, 630 (8th Cir.2001). See also, *United States v. Rodriguez–Arreola*, 270 F.3d 611 (8th Cir.2001) (asking driver if he is legally in the United States is permissible). If the defendant's responses are inconsistent with known facts, such as the very apparent smell of burning marijuana in a vehicle, a trooper's suspicions may be sufficiently raised to justify expanding the scope of the stop and asking additional, more intrusive, questions. *Morgan*, 270 F.3d at 631–32.

■ When told that he and his vehicle would be searched, Mr. Cotton responded by disclosing the marijuana in his coat pocket. Advising the defendant that a search would occur is not a threat or impermissibly coercive under the Fourth Amendment. *United States v. Raines*, 536 F.2d 796, 801 (8th Cir.1976). It was a statement of fact, supported by the significant basis for probable cause for Trooper Rathe's decision to perform these searches.

■ Where police have probable cause to believe a vehicle contains illegal contraband, they may search the vehicle without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 47–48, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419 (1970); *U.S. v. Thompson*, 906 F.2d 1292, 1298 (8th Cir.1990). Trooper Rathe had smelled burnt marijuana in the vehicle and the defendant had produced a package of marijuana in the patrol car. Evidence of criminal activity discovered in the possession of a vehicle occupant is sufficient to provide probable cause to perform a warrantless search of the passenger compartment of that automobile and any containers therein. *Belton*, 453 U:S. at 460, 101 S.Ct. at 2864; *U.S. v. Booker*, 269 F.3d 930, 931 (8th Cir.2001) (cannabis observed on floor of vehicle during traffic stop established probable cause to detain the driver and search the vehicle); *United States v. Riedesel*, 987 F.2d 1383, 1389–90 (8th Cir.1993) (upon finding a controlled substance during search of passenger, officers had probable cause to believe that the vehicle contained contraband and to perform a warrantless search of the entire vehicle.)

During the search of the vehicle, Trooper Rathe found a package of a white substance believed at the time to be crack cocaine. The vehicle passenger, Mr. Young, who was standing in the ditch, was then handcuffed by Trooper Rathe. The defendant responded to these actions by getting out of the patrol car and stating that the drugs found were his and that Mr. Young was not involved. The defendant now moves to suppress these statements, contending that they arose from interroga-

tion done in violation of Miranda. The government contends that the statements were voluntarily made by the defendant and therefore *Miranda* is inapplicable.

 Miranda requires that a suspect be warned of his rights under the Fifth Amendment prior to any interrogation while in custody. *U.S. v. Griffin*, 922 F.2d 1343, 1347 (8th Cir.1990). However, " '[i]nterrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Statements voluntarily made by a defendant while in custody are not protected by the Fifth Amendment or the exclusionary principles of Miranda. The Eighth Circuit has held:

> Statements volunteered by a suspect during the course of routine arrest procedures were not the products of interrogation ..., and that custodial statements made on the suspect's own initiative are not subject to the safeguards of *Miranda*. *Miranda* does not protect an accused "from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."

*Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir.1989) (internal citations omitted). Initiation by a defendant occurs when the defendant evinces "a willingness and a desire for a generalized discussion about the investigation." *Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir.2000) (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)).

 Interrogation includes not only express questioning by the officer, but also any words or actions which "police should know are reasonably likely to elicit an incriminating response from the suspect."

*Id.* (citing *Innis*, 446 U.S. at 301, 100 S.Ct. 1682).

In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*[5]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment. *Arizona v. Mauro*, 481 U.S. 520, 529–30, 107 S.Ct. 1931, 1937, 95 L.Ed.2d 458 (1987). Therefore, "in determining whether the statement was the result of an interrogation, the focus is on [the defendant's] own perceptions of the [officer's] behavior at the time the conversation took place." *Boykin v. Leapley*, 28 F.3d 788, 791 (8th Cir.1994). See also, *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir.2000).

 Even assuming that the defendant was in custody when he exited the patrol car and approached Trooper Rathe and Mr. Young, his inculpatory statements were not in response to any questioning by Trooper Rathe. The officer was performing his duties and not attempting to elicit any response or admissions from the defendant. These statements to Trooper Rathe during the handcuffing of Mr. Young, wherein the defendant admits that he owned the drugs found in the vehicle, were voluntary and not the product of custodial interrogation. There is no basis under the Fifth Amendment to suppress these statements.

 In contrast, when Mr. Cotton was being handcuffed, he was clearly in custody. During that time Trooper Rathe asked him about the drugs found in the vehicle and who owned them. The safeguards of Miranda "come into play whenever a person in custody is subjected to either express questioning or its functional

---

5. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

equivalent." *Innis,* 446 U.S. at 300, 100 S.Ct. at 1689. Trooper Rathe's questioning to elicit information about the ownership, type and amount of the drugs found in the vehicle while defendant was being handcuffed was custodial interrogation. Absent *Miranda* Warnings, this questioning violated the defendant's rights under the Fifth Amendment. As the government has conceded, the defendant's answers to these questions must be suppressed.

The government has also conceded that custodial interrogation occurred when the defendant was tackled in the ditch while trying to flee with the package of suspected crack and, when the package could not be seen, was asked where it was and if the defendant had swallowed the contents. No *Miranda* warnings were given at that time. The government states that the responses to these questions should also be suppressed.

I conclude that the traffic stop of the defendant, and the investigation and questioning of the defendant during that stop did not violate the defendants' rights under the Fourth Amendment. I find no constitutional basis to suppress the evidence arising as a result of this traffic stop.

I further conclude that the statements made by the defendant while Mr. Young was being handcuffed were voluntary and not subject to suppression under the Fifth Amendment. However, those statements made by the defendant at the scene of this traffic stop and in response to questioning by the troopers during and after Mr. Cotton was handcuffed are inadmissible under the Fifth Amendment.

Finally, because no basis has been found to dismiss the indictment, I recommend that defendant's motion to dismiss be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Lyle E. Strom, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the defendant's motion to dismissed be denied, and that his motion to suppress be denied in part and granted in part as set forth herein.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

May 6, 2002.