**UNITED STATES of America,
Plaintiff,**

v.

**Bernardo Perez BENITEZ, Defendant.**

**No. 1:08–cr–00049.**

United States District Court,
S.D. Iowa.

May 12, 2009.

B. John Burns, III, Federal Public Defenders Office, Des Moines, IA, for Defendant.

Rachel J. Scherle, United States Attorney's Office, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is a Motion to Suppress filed by Defendant, Bernardo Benitez, on November 7, 2008. Clerk's No. 39. The Government filed a resistance on November 28, 2008. Clerk's No. 42. Defendant then withdrew his Motion, only to have it reinstated on April 15, 2009. Clerk's No. 70. The Court held a hearing on the matter on April 29, 2009. Clerk's No. 84. The matter is now fully submitted.

### I. BACKGROUND

On August 19, 2008, at approximately 12:00 p.m., Trooper Ken Haas ("Trooper Haas") of the Iowa State Patrol initiated a traffic stop of a U-haul, which Defendant was driving, for speeding and crossing the fog lines. Tr. at 2–7.[1] During the subsequent stop, Trooper Haas discovered a large quantity of narcotics, leading to a charge of Possession with Intent to Distribute Marijuana. Clerk's No. 28.[2] Defendant now seeks to exclude all incriminating evidence found during the stop on the ground that the initial stop occurred in violation of his Fourth Amendment rights. See Def.'s Br.; Tr. at 20 ("We're challenging only the stop, Your Honor."). Defen-

---

1. All transcript references refer to the daily unedited RealTime transcripts provided to the Court by the reporter.

2. Defendant was also charged with being an illegal alien, without proper consent, being found in the United States following deportation. Clerk's No. 28.

dant specifically argues that Trooper Haas "pulled the vehicles [sic] over after observing that its occupants were Hispanic." Def.'s Br. at 4.

## II. LAW AND ANALYSIS

■ The Fourth Amendment guarantees "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment and, as such, must be supported by reasonable suspicion or probable cause." *United States v. Houston,* 548 F.3d 1151, 1154 (8th Cir.2008) (citing *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001)). "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator. If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Bell,* 86 F.3d 820, 822 (8th Cir.1996) (internal citations omitted). Thus, even if the decision to initiate a traffic stop was based upon a defendant's race, no Fourth Amendment violation has occurred so long as probable cause existed for the stop. This is because claims of racial discrimination in law enforcement fall within the province of the Equal Protection Clause. *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective inten-

tions play no role in ordinary, probable-cause Fourth Amendment analysis.").

■ Allegations that a defendant was stopped on account of his race are "a cognizable equal protection claim." *Johnson v. Crooks,* 326 F.3d 995, 999 (8th Cir. 2003). Indeed:

> The Equal Protection Clause precludes selective enforcement of the law based on race. A person claiming unequal enforcement of a facially neutral statute must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose. To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them. To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race. If the claimant shows both discriminatory effect and purpose, the burden shifts to the Government to show the same enforcement decision would have been made even if the discriminatory purpose had not been considered.

*Bell,* 86 F.3d at 823 (internal citations omitted). The remedy for an equal protection violation in the criminal setting is uncertain, as the Supreme Court has yet to decide whether suppression is an appropriate remedy for a violation of the Equal Protection Clause. *United States v. Williams,* 431 F.3d 296, 300 (8th Cir.2005) (citing *United States v. Chavez,* 281 F.3d 479, 486–87 (5th Cir.2002)). Other courts have equivocated on this issue, and this Court sees no need to delve into the debate for the reasons stated below.[3] *See*

---

**3.** The Court will note, though, that exclusion would seem to be the proper remedy as it is highly doubtful that civil remedies would adequately deter police agencies from engaging in this unconstitutional and blatantly reprehensible behavior. *See* Books Holland, *Safeguarding Equal Protection Rights: The Search for an Exclusionary Rule Under the Equal Protection Clause,* 37 Am.Crim.L.Rev. 1107, 1111 (2000). This concern is especially true

*United States v. Nichols,* 512 F.3d 789, 794 (6th Cir.2008) ("While we, of course, agree with the general proposition that selective enforcement of the law based on a suspect's race may violate the Fourteenth Amendment, we do not agree that the proper remedy for such violations is necessarily suppression of evidence otherwise lawfully obtained. The exclusionary rule is typically applied as a remedy for Fourth Amendment Violations...."); *United States v. Hartwell,* 67 F.Supp.2d 784, 792 (E.D.Mich.1999) (finding that suppression would be an appropriate remedy).

■ Turning to this case, the Court credits Trooper Haas' testimony that he saw Defendant commit three traffic violations, thereby giving him probable cause to stop Defendant. Defendant does not seriously challenge this fact, so the only material issue before the Court is whether Trooper Haas violated the Equal Protection Clause by engaging in racial profiling. Although this is not the first time such a charge has been leveled at Trooper Haas, the Court must again dismiss the allegation because Defendant has failed to meet his burden under the test articulated in *Bell.* Defendant has not shown that Trooper Haas failed to enforce the same traffic laws against individuals of other races. Further, Defendant cannot establish that Trooper Haas did, in fact, act from a discriminatory purpose because Defendant can only point to the fact that Trooper Haas pulled along side Defendant in order to observe him prior to initiating the stop. This is insufficient because Trooper Haas testified that he routinely does so for safety and other legitimate law enforcement purposes.[4] Tr. at 34–38. Therefore, Defendant has presented no material evi-

---

in the context of a traffic stop where the law imposes a nearly impossible burden on Defendant to show that the officer did not stop other motorists committing the same offense. *United States v. Mesa–Roche,* 288 F.Supp.2d 1172, 1186 (D.Kan.2003) (discussing the difficulty of showing that "a similarly situated individual was not stopped" even with discovery). Indeed, the Court cannot conceive of a plausible means of satisfying this aspect of the legal standard short of either a candid admission by an officer or a comprehensive statistical study. Thus, should a defendant ever meet this test, the Court would be loathe to implicitly condone the improper behavior by allowing the Government to utilize the evidence it garnered. In the sage words of the Sixth Circuit:

> It is a touchstone of Fourth Amendment jurisprudence that evidence obtained by law enforcement officers in violation of certain guarantees of the Constitution is inadmissible in state or federal criminal trials upon objection by a proper party. The exclusionary rule serves the primary purpose of deterring unlawful police conduct by compelling respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. This deterrence rationale applies also to evidence tainted by violations of the Fourteenth Amendment. Arguably, the exclusionary rule as applied to Fourth Amendment violations advances nondeterrence ends, too. For example, by keeping tainted evidence out, the exclusionary rule prevents courts from becoming accomplices in the willful disobedience of a Constitution they are sworn to uphold. Further, suppression of tainted evidence will assure the people—all potential victims of unlawful government conduct—that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government. Presumably, these salutory effects would accompany the application of the exclusionary rule to the Equal Protection Clause of the Fourteenth Amendment as well.

*United States v. Jennings,* 985 F.2d 562, 1993 WL 5927, *4 n. 2 (6th Cir.1993) (internal citations and quotations omitted).

4. The Court will also note, though, that although Trooper Haas's lengthy explanation of the practice on cross makes it appear prudent, the Court cannot recall another incident in which Trooper Haas engaged in this behavior, despite Trooper Haas' numerous appearances before the Court on other suppression matters.

dence to contradict Trooper Haas's testimony that race was not a factor in his decision to stop Defendant. *Id.* at 39. Consequently, the Court rejects Defendant's equal protection claim and has no need to evaluate whether suppression would be an appropriate remedy.

## III.  CONCLUSION

For the forgoing reasons, the Court DENIES Defendant's Motion to Suppress (Clerk's No. 39).  The Court can find no evidence that Trooper Haas engaged in racial profiling.

IT IS SO ORDERED.