

## Missouri Court of Appeals
### Southern District

### In Division

STATE OF MISSOURI,

      Plaintiff-Respondent,

v.

BRANDON WILLIE WALLS,

      Defendant-Appellant.

No. SD38786

Filed: October 14, 2025

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
Honorable Philip Fuhrman

**AFFIRMED**

Following a bench-trial, the circuit court found Brandon Willie Walls ("Defendant") guilty of the class-B misdemeanor of driving while intoxicated (*see* section 577.010, RSMo Supp. 2017). Defendant's sole point on appeal claims the circuit court plainly erred by failing to *sua sponte* suppress the evidence that supported Defendant's conviction because that evidence was the fruit of an unlawful traffic stop in that it was not supported by reasonable suspicion. Because Defendant has not

1

demonstrated a facial showing of manifest injustice, we decline plain-error review and affirm the judgment of the circuit court.

## Standard of Review & Governing Law

"Generally, this Court does not review unpreserved claims of error." ***State v. Brandolese***, 601 S.W.3d 519, 525-26 (Mo. banc 2020). "Rule 30.20 alters the general rule by giving appellate courts discretion to review 'plain errors affecting substantial rights may be considered in the discretion of the court … when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'" ***Id.*** at 526 (quoting Rule 30.20).

"Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." ***Id.*** (quoting ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017) (internal quotation omitted)). "Unless manifest injustice or a miscarriage of justice is shown, an appellate court should 'decline to review for plain error under Rule 30.20.'" ***Id.*** (quoting ***State v. Jones***, 427 S.W.3d 191, 196 (Mo. banc 2014)). "'[T]he defendant bears the burden of demonstrating manifest injustice' entitling him to plain error review." ***Id.*** (quoting ***State v. Oates***, 540 S.W.3d 858, 863 (Mo. banc 2018)).

"The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures." ***State v. Smith***, 595 S.W.3d 143, 145 (Mo. banc 2020). "A temporary, noncustodial traffic stop constitutes an 'unreasonable' 'seizure' under the Fourth Amendment unless the stop is supported by

reasonable suspicion or probable cause." *Id.* "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator." *Id.* (quoting *U.S. v. Bell*, 86 F.3d 820, 822 (8th Cir. 1996)).

### The Evidence

On the night of March 11, 2022, a Springfield Police Department officer ("Officer") was stopped at an intersection for a red light. While waiting for the light to turn green, Officer noticed that a gray Jeep stopped at the red light on the other side of the intersection did not have its headlights on. Officer testified at trial that it was the time of night when headlights are required to be illuminated. Before the light turned green, the driver of the Jeep turned the vehicle's headlights on. In Officer's experience, headlight violations are common in cases that involve intoxicated drivers.

When the light turned green, the Jeep slowly creeped forward into the middle of the intersection and then stopped abruptly. While the Jeep was stopped in the middle of the intersection, blocking travel lanes, the vehicle's tires were squealing and spinning while the vehicle remained in place. Based upon that observation, Officer believed that the driver of the Jeep was operating the vehicle with its parking brake engaged. The Jeep remained in the middle of the intersection when the traffic light turned back to red. At

that point, Officer activated his emergency lights and conducted the traffic stop at issue.[1]

When Officer walked up to the Jeep, Officer noticed that Defendant was the driver and sole occupant of the vehicle. Officer believed that Defendant was unaware that Officer was approaching the vehicle as Defendant continued to attempt to drive the vehicle forward. When Officer finally caught Defendant's attention, Defendant rolled his window down. Officer confirmed Defendant's emergency parking brake was engaged, and Officer also smelled a strong odor of intoxicating liquors emanating from Defendant. Defendant's eyes were bloodshot and glassy, both of which indicated intoxication based upon Officer's training and experience. When Officer asked Defendant if he had consumed any alcohol, Defendant said that he didn't have anything to drink.

---

[1] "Sections 307.040 and 307.020(9), RSMo 2000 provide that vehicles must display 'lighted lamps' 'at any time from a half-hour after sunset to a half-hour before sunrise[.]'" *State v. McIntosh*, 159 S.W.3d 505, 508 (Mo. App. S.D. 2005); *accord* SPRINGFIELD, MO., section 106-16 (1981) ("No person shall drive a vehicle during the period from one-half hour after sunset to one-half hour before sunrise without front and rear lights, which shall meet all the requirements of state law"). "Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device, no person shall: (1) Stop, stand or park a vehicle: … (c) [w]ithin an intersection[.]" Section 300.440.1(a)(3), RSMo 2016; *accord* SPRINGFIELD, MO., section 106-300 (2000) ("No person shall stop, stand or park a vehicle … [w]ithin an intersection").

Officer then conducted four field-sobriety tests, each of which produced indicators of intoxication. Defendant refused to submit to a breath test. Officer arrested Defendant for driving while intoxicated, and after a warrant was obtained, a blood sample revealed that Defendant's blood alcohol content was .145%, greater than the legal limit of .08%. *See* section 577.012.1, RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

**Analysis**

Defendant's sole point claims:

> The trial court plainly erred by not suppressing and by considering the evidence of the stop of [Defendant's] vehicle and the evidence subsequently derived from that seizure, because this violated [Defendant's] right to be free from unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 15 of the Missouri Constitution, in that the seizure was not based on reasonable suspicion because nothing in [Defendant's] behavior prior to [Officer]'s initial show of authority in stopping [Defendant's] vehicle rose to the level of articulable facts or inferences that would lead a reasonable officer in [Officer]'s position to conclude that criminal activity was afoot. Because the evidence of the stop and all evidence that was derived from the stop were absolutely necessary to prove [Defendant] committed the offense as charged, [Defendant] suffered manifest injustice by the trial court's failure to *sua sponte* suppress this evidence.

Prior to conducting the traffic stop, Officer observed that Defendant's headlights were not on when they were required to be illuminated, and Defendant stopped in the middle of an intersection. Because even a minor traffic violation constitutes reasonable suspicion for a traffic stop, Defendant has failed to facially demonstrate that Officer's traffic stop produced a manifest injustice or miscarriage of justice.

Accordingly, we decline plain-error review and affirm the presumed-correct judgment of the circuit court.


DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JENNIFER R. GROWCOCK, C.J. – CONCURS